EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Willie Ellis, Roys-
worth Grant, Plaintiffs–Appellees,

Iran Bennett, Charles Brown, Leroy
Pratt, Fitzroy Trancoso, Angel Vas-
quez,      Plaintiffs–Intervenors–Appel-
lees,

v.

LOCAL 638 etc., Local 580, Internation-
al Association of Bridge, Structure
and Ornamental Ironworkers, Joint
Apprentice Journeyman Educational
Fund, Allied Building Metal Indus-
tries, Local 28 of the Sheet Metal
Workers International Association, et.
al., Defendants–Appellants.

Docket No. 01–6109.

United States Court of Appeals,
Second Circuit.

April 11, 2002.

Edward J. Groarke; Stephanie M. Sua-
rez and Denis A. Engel of counsel, Garden
City, NY, for Defendants–Appellants.

Paul D. Ramshaw, Equal Employment
Opportunity Commission, Washington, DC,
for Plaintiffs–Appellees.

Present SACK, OAKES, and BRIGHT,*
Circuit Judges.

SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS
HEREBY ORDERED, ADJUDGED
AND DECREED that the appeal of the
judgment of April 18, 2001 be, and it here-
by is, DISMISSED for lack of subject
matter jurisdiction.

---

* The Honorable Myron H. Bright, Judge of the
United States Court of Appeals for the Eighth

Circuit, sitting by designation.

Local 580, International Association of Bridge, Structural and Ornamental Iron-workers, AFL–CIO and the Joint Apprentice–Journeyman Educational Fund (collectively "Local 580") appeal an April 18, 2001 interlocutory order of the United States District Court for the Southern District of New York (Robert L. Carter, *Judge*) granting intervener status to four minority members of the union—Iran Bennett, Charles Brown, Leroy Pratt, and Angel Vasquez.

In 1978, Local 580 entered a consent decree with the Equal Employment Opportunity Commission ("EEOC") in the United States District Court for the Southern District of New York prohibiting the union from engaging in racial discrimination. Subsequently, the district court found that Local 580 manifested "deliberate and egregious indifference to ... obligations under the Consent Judgment," prompting it to enter several judgments and orders holding the union in contempt. *See, e.g., EEOC v. Local 580*, 925 F.2d 588, 594 (2d Cir.1991); *EEOC v. Local 580*, 669 F.Supp. 606, 609–11 (S.D.N.Y.1987).

The present litigation began in 1998, when five minority members of the union filed a motion asking Judge Carter to hold the union in contempt based on its persisting racial discrimination. The district court treated the motion as one requesting intervenor status, which it duly granted as to four minority union members. Local 580 appealed.

Under 28 U.S.C. § 1292(a)(1), we have subject matter jurisdiction from "[i]nterlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court." *Id.* Two conditions precedent must be satisfied for jurisdiction under § 1292(a)(1): "(1)

... the district court erroneously interpreted the terms of the consent decree [and] 'modified' that injunction within the meaning of § 1292(a)(1)"; and (2) "the order of the district court might have a serious, perhaps irreparable, consequence ... that can be effectually challenged only by immediate appeal." *EEOC v. Local 40*, 76 F.3d 76, 79 (2d Cir.1996) (internal punctuation and citations omitted).

Local 580 argues that the district court's April 18, 2001 order was both a modification of and a refusal to dissolve an injunction. Its argument relies on paragraphs three and five of a 1991 order entered by the district court pursuant to Fed.R.Civ.P. 54(b) which granted "final approval of the settlement of the back pay claims" (the "Back Pay order"). Local 580 argues that these provisions' plain language precludes *all* claims for "individual relief for minority members" brought pursuant to the consent decree, including those arising after the order was issued in 1991.

"Consent decrees are a hybrid in the sense that they are at once both contracts and orders ... construed largely as contracts, but ... enforced as orders." *Berger v. Heckler*, 771 F.2d 1556, 1567–68 (2d Cir.1985). The Back Pay order describes itself as a "final ... settlement of the *remaining* back pay claims." (emphasis added) Thus, not all back pay claims but only those that "remain[ ]" at the time the order was entered fall within its ambit. The Back Pay order was also styled a Fed.R.Civ.P. 54(b) order. Rule 54(b) permits resolution of less than all claims in a wider action. *See* Fed.R.Civ.P. 54(b) ("When more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ...."). Rule 54 permits resolution of claims *already* presented, not those yet to be presented. Because the Back Pay order by its terms only applies, and only

8

could apply, to claims filed before the effective date of the order, the order does not govern claims filed after that date.

Paragraph Five of the Back Pay order also limited the order's scope "to the extent [of the district court's past] orders and judgments [that] provided individual relief." The Back Pay order's preamble further mentioned two previous awards as sources of back pay awards. Examination of these earlier orders reveals that they encompassed only claims based on past discrimination but did not create a mechanism for the settlement of future claims. According to one 1989 order, only "those present or past black and Hispanic journeymen workers or applicants for journeyman status, who ... were discriminated against by Local 580" receive back pay under that order. Local 580, in sum, bargaining for and obtained a release from all claims arising prior to the effective date of the Back Pay order—not for an absolute bar to future discrimination claims.

Local 580 finally relies on the releases signed by two plaintiffs, Brown and Pratt, to demonstrate that a *quid pro quo* occurred. The releases confirm that the *quid pro quo* concerned only past claims. Pratt's and Brown's releases, for instance, cover claims "from the beginning of time to the date of this Release and Agreement Not to Sue." The releases thus exclude on their face claims arising from new discrimination.

Because Local 580 fails to demonstrate that the district court erroneously interpreted the consent decree, we need not resolve the question of whether it must also make a showing of irreparable harm.

For the foregoing reasons, we DISMISS the appeal for lack of subject matter jurisdiction.